**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICAN PHYSICIAN PARTNERS, LLC, *et al.*,[1] | ) | Case No. 23-11469 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**GLOBAL NOTES AND STATEMENTS OF LIMITATIONS, METHODOLOGY, AND
DISCLAIMERS REGARDING DEBTORS' SCHEDULES OF ASSETS AND
LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

American Physician Partners, LLC and its debtor affiliates in the above-captioned chapter 11 cases filed on September 18, 2023 and September 19, 2023, as applicable, as debtors and debtors in possession (collectively, the "**Debtors**"), are filing their respective Schedules of Assets and Liabilities (each, a "**Schedule**," and collectively, the "**Schedules**") and Statements of Financial Affairs (each, a "**Statement**" and collectively, the "**Statements**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") pursuant to section 521 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

These *Global Notes and Statements of Limitations, Methodology, and Disclaimers Regarding Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs* (the "**Global Notes**") pertain to, and are incorporated by reference in, and comprise an integral part of all of the Schedules and Statements. The Global Notes are in addition to the specific notes set forth below with respect to the Schedules and Statements (the "**Specific Notes**," and, together with the Global Notes, the "**Notes**"). These Notes should be referred to, and referenced in connection with, any review of the Schedules and Statements.

The Schedules and Statements are unaudited and subject to potential adjustment. In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of preparation. The Debtors have made reasonable efforts to ensure that the Schedules and Statements are as accurate and complete as possible under the circumstances; however, subsequent information or discovery may result in material changes to the Schedules and Statements and errors or omissions may exist.

The Debtors reserve all rights to amend or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including the right to dispute or otherwise assert offsets or defenses to any claim reflected on the Schedules and Statements as to amount, liability, classification, identity of Debtor, or to otherwise subsequently

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/AmericanPhysicianPartners.  The location of American Physician Partners, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 5121 Maryland Way, Suite 300, Brentwood, TN 37027.

designate any claim as "disputed," "contingent," or "unliquidated." Furthermore, nothing contained in the Schedules, Statements, or Notes shall constitute a waiver of any of the Debtors' rights or an admission with respect to their chapter 11 cases, including any issues involving objections to claims, substantive consolidation, equitable subordination, defenses, characterization or recharacterization of contracts and leases, assumption or rejection of contracts and leases under the provisions of chapter 3 of the Bankruptcy Code, causes of action arising under the provisions of chapter 5 of the Bankruptcy Code, or any other relevant applicable laws to recover assets or avoid transfers.

A. **Global Notes and Overview of Methodology**

The **Schedules, Statements, and Notes should not be relied upon by any persons for information relating to current or future financial conditions, events, or performance of any of the Debtors or their affiliates.**

1.      **Description of the Chapter 11 Cases**. On September 18, 2023 and September 19, 2023, as applicable (the "**Petition Date**"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  On September 21, 2023, the Bankruptcy Court entered an order authorizing the joint administration of the chapter 11 cases pursuant to Bankruptcy Rule 1015(b) [Docket No. 39]. Notwithstanding the joint administration of the Debtors' cases for procedural purposes, each Debtor has filed its own Schedules and Statements.

2.      **Basis of Presentation**. In the ordinary course of business, the Debtors prepare consolidated financial statements for financial reporting purposes on a monthly basis. The Schedules and Statements are unaudited and are the result of the Debtors' reasonable efforts to report certain financial information of each Debtor on an unconsolidated basis. The Schedules and Statements neither purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("**GAAP**"), nor are they intended to be fully reconciled with the financial statements of each Debtor.  The Debtors used reasonable efforts to attribute the assets and liabilities, certain required financial information, and various cash disbursements to each individual Debtor entity. Because the Debtors' accounting systems, policies, and practices were developed for consolidated reporting purposes rather than for reporting by legal entity, however, it is possible that not all assets and liabilities have been recorded with the correct legal entity on the Schedules and Statements.

3.      **Reporting Date**. Unless otherwise noted in specific responses, the Schedules and Statements reflect the Debtors' books and records as of the close of business on September 18, 2023, or the latest available record date before then.

4.      **Current Values**. The assets and liabilities of each Debtor are listed on the basis of the book value of the asset or liability in the respective Debtor's accounting books and records. Unless otherwise noted, the carrying value on each of the Debtor's books, rather than the current market value, is reflected in the Schedules and Statements.

5.      **Confidentiality**. There may be instances when personal information was not included or was redacted due to the nature of an agreement between a Debtor and a third party or

2

concerns or to protect the privacy of an individual. Pursuant to the *Interim Order (I) Authorizing the Debtors to (A) File a Consolidated List of Creditors in Lieu of Submitting a Separate Mailing Matrix for Each Debtor, (B) File a Consolidated List of the Debtors Thirty Largest Unsecured Creditors, and (C) Redact Certain Personally Identifiable Information for Individual Creditors; and (II) Granting Related Relief* [Docket No. 41], the Debtors are authorized to redact personally identifiable information from their Schedules and Statements.  Further, pursuant to *Interim Order Authorizing Certain Procedures to Maintain Confidentiality of Protected Health Information as Required by Applicable Privacy Rules* [Docket No. 42], the Debtors are also authorized to maintain the confidentiality of patient information as required by the Health Insurance Portability and Accountability Act of 1996.

6.     **Consolidated Entity Accounts Payable and Disbursement Systems**.  As described in the *Motion Regarding Chapter 11 First Day Motions Debtors' Motion for Entry of Interim and Final Orders Authorizing the Debtors to (A) Continue Operating Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Granting Related Relief* [Docket No. 6] (the "**Cash Management Motion**"), the Debtors utilize a centralized cash management system in the ordinary course of business to collect, concentrate, and disburse funds generated by their operations.  In the ordinary course of business, the Debtors maintained business relationships among each other, which result in intercompany receivables (the "**Intercompany Claims**") arising from intercompany transactions (the "**Intercompany Transactions**").  Additional information regarding the Intercompany Claims and Intercompany Transactions is described in the Cash Management Motion. Unless otherwise noted, the Debtors have reported the aggregate net intercompany balances among the Debtors as assets on Schedule A/B or as liabilities on Schedule E/F, as appropriate.

7.     **Accuracy**.  The financial information disclosed herein was not prepared in accordance with federal or state securities laws or other applicable non-bankruptcy law or in lieu of complying with any periodic reporting requirements thereunder. Persons and entities trading in or otherwise purchasing, selling, or transferring the claims against or equity interests in the Debtors should evaluate this financial information considering the purposes for which it was prepared.

8.     **Undetermined Amounts**. Claim amounts that could not readily be quantified by the Debtors are scheduled as "undetermined," "unknown," or "N/A." The description of an amount as "undetermined," "unknown," or "N/A" is not intended to reflect upon the materiality of the amount.

9.     **Liabilities**.  The Debtors have sought to allocate liabilities between the prepetition and post-petition periods based on the information and research conducted in connection with the preparation of the Schedules and Statements.  As additional information becomes available and further research is conducted, the allocation of liabilities between the prepetition and post-petition periods may change.  Accordingly, the Debtors reserve all of their rights to amend, supplement, or otherwise modify the Schedules and Statements as is necessary or appropriate.

10.     **Insiders.**  For purposes of the Schedules and Statements, the Debtors define "insiders" pursuant to section 101(31) of the Bankruptcy Code as:  (a) directors; (b) officers; (c) persons in control of the Debtors; (d) relatives of the Debtors' directors, officers, or persons in

control of the Debtors; and (e) debtor/non-Debtor affiliates of the foregoing. Persons listed as "insiders" have been included for informational purposes only and by including them in the Schedules, shall not constitute an admission that those persons are insiders for purposes of section 101(31) of the Bankruptcy Code. Moreover, the Debtors do not take any position with respect to: (a) any insider's influence over the control of the Debtors; (b) the management responsibilities or functions of any such insider; (c) the decision making or corporate authority of any such insider; or (d) whether the Debtors or any such insider could successfully argue that he or she is not an "insider" under applicable law or with respect to any theories of liability or for any other purpose. The listing of a party as an "insider" is not intended to be nor should be construed as a legal characterization of such party as an insider and does not act as an admission of any fact, Claim, right, or defense, and all such rights, Claims, and defenses are hereby expressly reserved.

11.    **Totals**. All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements and exclude items identified as "unknown" or "undetermined." If there are unknown or undetermined amounts, the actual totals may be materially different from the listed totals.

12.    **Currency**. All amounts shown in the Schedules and Statements are in U.S. Dollars, unless otherwise indicated.

13.    **Payment of Prepetition Claims Pursuant to First Day Orders**. The Debtors have requested authority to pay certain outstanding prepetition claims pursuant to orders entered by this court after the initial hearing in these cases (collectively, the "**First Day Orders**"). The Schedules and Statements reflect the Debtors' outstanding liabilities in their amounts owed as of the Petition Date without reducing liabilities on account of any payments authorized under the First Day Orders. If liabilities on account of prepetition wages and benefits have been satisfied in full, they are not listed on the Schedules and Statements unless otherwise noted.

14.    **Other Paid Claims**. If the Debtors have reached any post-petition settlement with a vendor or other creditor, the terms of such settlement will prevail, supersede amounts listed in the Schedules and Statements, and shall be enforceable by all parties.

15.    **Setoffs**. The Debtors routinely incurred certain setoffs from customers and suppliers in the ordinary course of business. Setoffs in the ordinary course can result from various items including pricing discrepancies, customer programs, returns, and other disputes between the Debtors and their customers or suppliers. In the ordinary course of business, the Debtors would setoff invoices with credit memos. These routine setoffs were consistent with the ordinary course of business in the Debtors' industry, and, therefore, were particularly voluminous, unduly burdensome, and costly for the Debtors to regularly document. Therefore, although such setoffs and other similar rights may have been accounted for when scheduling certain amounts, these ordinary course setoffs are not always independently accounted for and may be excluded from the Schedules and Statements.

16.    **Revenue Cycle Management Procedures.** As discussed in the *Declaration of John C. DiDonato in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "**First Day Declaration**"), historically, most of the Company's revenue has been attributable to agreements with emergency departments under the AR contracts model, where typically the

Company (1) provided the staffing/management services and (2) was responsible for coding, billing, and collecting the fees billed for services from Medicaid, Medicare, Blue Cross Blue Shield, commercial payors, insurance companies and/or the patients and related services ("**Revenue Cycle Management**" or "**RCM Services**").  Commencing in September 2019, the Debtors contracted with and utilized a non-affiliate service provider – Medical Consultants, Inc. ("MCI"), a subsidiary of RI RCM Holdco, Inc. ("**R1**") – to provide the RCM Services for the Debtors.  MCI has been the exclusive Revenue Cycle Management provider for the Company for the past several years and, because of the relationship, maintains voluminous records/documents with history and supporting and claims processing details.  The Debtors have used their best efforts to insure that the information contained in the Schedules, Statements, or Notes includes, where necessary, all assets and liabilities of the Debtors as reflected in records maintained by R1 as related to the RCM Services.

      17.    **Debtors' Reservation of Rights**. Nothing contained in the Schedules, Statements, or Notes shall constitute a waiver of rights with respect to these chapter 11 cases, including the following:

      a.    Any failure to designate a claim listed on the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such amount is not "disputed," "contingent," or "unliquidated." The Debtors reserve the right to dispute and to assert setoff rights, counterclaims, and defenses to any claim reflected on the Schedules as to amount, liability, and classification, and to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated."

      b.    Notwithstanding that the Debtors have made reasonable efforts to correctly characterize, classify, categorize, or designate certain claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements, the Debtors nonetheless may have improperly characterized, classified, categorized, or designated certain items. The Debtors thus reserve all rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as is necessary and appropriate.

      c.    The listing of a claim or agreement (i) on Schedule D as "secured," (ii) on Schedule E/F (Part 1) as "priority," (iii) on Schedule E/F (Part 2) as "unsecured," or (iv) on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant, the executory nature of the agreement under section 365 of the Bankruptcy Code, or a waiver of the Debtors' rights to recharacterize or reclassify such claim or agreement pursuant to a schedule amendment, claim objection or otherwise. Moreover, although the Debtors may have scheduled claims of various creditors as secured claims for informational purposes, no current valuation of the Debtors' assets in which such creditors may have a security interest has been undertaken. Except as provided in an order of the Bankruptcy Court, the Debtors reserve all rights to dispute and challenge the secured nature or amount of any such creditor's claims or the characterization of the structure of any transaction, or any document or instrument related to such creditor's claim.

d.  In the ordinary course of their businesses, the Debtors leased equipment and other assets from certain third-party lessors for use in their daily operations. The Debtors have made commercially reasonable efforts to list any such leases in Schedule G, and any current amounts due under such leases that were outstanding as of the Petition Date are listed on Schedule E/F. Except as otherwise noted herein, the property subject to any such lease is not reflected in Schedule A/B as either owned property or an asset of the Debtors, and neither is such property or assets of third parties within the control of the Debtors Nothing in the Schedules is or shall be construed as an admission or determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all rights with respect to any of such issues, including the recharacterization thereof.

e.  The claims of individual creditors for, among other things, goods, products, services or taxes are listed as the amounts entered on the Debtors' books and records and may not reflect credits, allowances or other adjustments due from such creditors to the Debtors. The Debtors reserve all of their rights with regard to such credits, allowances and other adjustments, including the right to assert claims objections or setoffs with respect to the same.

f.  The Debtors' businesses were part of a complex enterprise. Although the Debtors have exercised their reasonable efforts to ensure the accuracy of their Schedules and Statements, they nevertheless may contain errors and omissions. The Debtors hereby reserve all their rights to dispute the validity, status, and enforceability of any contracts, agreements, and leases identified in the Schedules and Statements, and to amend and supplement the Schedules and Statements as necessary.

g.  The Debtors further reserve all their rights, claims, and causes of action with respect to the contracts and agreements listed on the Schedules and Statements, including the right to dispute and challenge the characterization or the structure of any transaction, document, and instrument related to a creditor's claim.

h.  The Debtors exercised their reasonable efforts to locate and identify guarantees and other secondary liability claims (the "**Guarantees**") in their executory contracts, unexpired leases, secured financings, debt instruments, and other agreements. If such Guarantees have been identified, they are included in the relevant Schedules and Statements. Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other agreements may have been omitted inadvertently. Thus, the Debtors reserve their rights to amend and supplement the Schedules and Statements if additional Guarantees are identified. In addition, the Debtors reserve the right to amend the Schedules and Statements to re-characterize and reclassify any such contract or claim.

18.  **Global Notes Control**. If the Schedules or Statements differ from any of the foregoing Global Notes, the Global Notes shall control.

**B.  Specific Notes for Schedules**

1.    **Schedule A/B.**

   a.   **A/B.3**. The values provided for in Schedule A/B, Item 3 for each account for a given Debtor reflects the book ending cash balance of such account as of the Petition Date.

   b.   **A/B. 11**. Amounts listed reflect net patient receivable.

   c.   **A/B. 15**. Investments are listed as having an undetermined value.

   d.   **A/B. 38-41**. The Debtors' furniture, fixtures and equipment are listed at net book value.

   e.   **A/B. 73**. The Debtors may have certain residual amounts owed to them from their medical malpractice insurance provider.  These include: (i) overpayments of premiums for policy periods ended June 29, 2023 wherein the provider currently holds approximately $48 million in total; (ii) return of certain premiums paid for policy year beginning June 30, 2023 in the amount of approximately $1.3 million, which policy the provider has attempted to rescind and which rescission the Debtors dispute; and (iii) certain policy dividends for prior years owed to the Debtors which the provider has refused to pay, citing ongoing disputes.

   f.   **A/B.70–77**. Despite exercising commercially reasonable efforts to identify all known assets, the Debtors may not have listed all their causes of action or potential causes of action against third parties as assets in their Schedules.

2.    **Schedule D**.  Certain of the claims listed on Schedule D, as well as the Guarantees of those claims listed on Schedule H, arose, and were incurred on various dates; a determination of the date upon which each claim arose or was incurred would be unduly burdensome and cost prohibitive. Accordingly, not all these dates are included for each such claim. To the best of the Debtors' knowledge, all claims listed on Schedule D arose or were incurred before the Petition Date. The amounts in Schedule D are consistent with the Debtors' stipulations set forth in the *Motion to Approve Use of Cash Collateral Motion of the Debtors Pursuant to Sections 105, 361, 362, 363 and 507 of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-2 for Interim and Final Orders (A) Authorizing Debtors to Use Cash Collateral, (B) Granting Adequate Protection to Prepetition Secured Parties, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing* [Docket No. 10] (the "**Cash Collateral Motion**"), which are subject to investigation and challenge by the Official Committee of Unsecured Creditors or other parties in interest.

   Except as otherwise agreed to or stated pursuant to a stipulation or order entered by the Bankruptcy Court that is or becomes final, including any final order approving the Cash Collateral Motion, the Debtors and their estates and, subject to the foregoing limitations, note as

7

follows:  (a) although the Debtors may have scheduled claims of various creditors as secured claims for informational purposes, no current valuation of the Debtors' assets in which such creditors may have a lien has been undertaken; (b) the descriptions provided on Schedule D only are intended to be a summary; and (c) the Debtors have not included on Schedule D claims that were secured by property for which the collateral was not in the Debtors' possession as of the Petition Date.

Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens.

Except as specifically stated herein, real property lessors, equipment lessors, utility companies, and other parties which may hold security deposits or other security interests have not been listed on Schedule D.

The Debtors have not listed on Schedule D any parties whose claims may be secured through rights of setoff, deposits, or advance payments posted by, or on behalf of, the Debtors, or judgment or statutory lien rights.

3. **Schedule E/F**

a. **Part 1**.

Certain of the claims listed on Schedule E/F (Part 1) arose and were incurred on multiple dates; a determination of the date upon which each claim arose or was incurred would be unduly burdensome and cost prohibitive. Accordingly, not all these multiple dates are included for each such claim.

The liabilities listed on Schedule E/F (Part 1) do not reflect any analysis of such claims under sections 503 or 507 of the Bankruptcy Code. The Debtors reserve the right to dispute or challenge whether creditors listed on Schedule E/F are entitled to priority status pursuant to sections 503 or 507 of the Bankruptcy Code. The listing of a claim on Schedule E/F, Part 1, does not constitute an admission by the Debtors that such claim or any portion thereof is entitled to priority status.

Claims owing to various taxing authorities to which the Debtors potentially may be liable are included on the Debtors' Schedule E/F. Certain of such claims, however, may be subject to ongoing audits or the Debtors otherwise are unable to determine with certainty the amount of the remaining claims listed on Schedule E/F. Therefore, the Debtors have listed all such claims as contingent, pending final resolution of ongoing audits or other outstanding issues.

b. **Part 2**.

The Debtors have exercised their commercially reasonable efforts to list all liabilities on Schedule E/F of each applicable Debtor. As a result of the Debtors' consolidated operations, however, the reader should review Schedule E/F for all Debtors in these cases for a complete understanding of the unsecured debts of the Debtors. Certain creditors listed on Schedule E/F may owe amounts to the Debtors, and, as such, the Debtors may have valid setoff and recoupment rights with respect to such amounts. The amounts listed on Schedule E/F may not

8

reflect any such right of setoff or recoupment, and the Debtors reserve all rights to assert the same and to dispute and challenge any setoff or recoupment rights that may be asserted against the Debtors by a creditor. Additionally, certain creditors may assert liens against the Debtors for amounts listed on Schedule E/F. The Debtors reserve their rights to dispute and challenge the validity, perfection, and immunity from avoidance of any lien purported to be perfected by a creditor listed on Schedule E/F of any Debtor. In addition, certain claims listed on Schedule E/F (Part 2) may be entitled to priority under section 503(b)(9) of the Bankruptcy Code.

The Debtors have included trade creditors and taxing authorities on Schedule E/F, some of whose claims may have been satisfied, in whole or in part, pursuant to the First Day Orders. Notwithstanding the foregoing, the Debtors have reflected the prepetition liabilities of such trade creditors and taxing authorities as of the Petition Date. Moreover, Schedule E/F does not include certain balances including deferred liabilities, accruals, or general reserves. The accruals primarily represent general estimates of liabilities and do not represent specific claims as of the Petition Date. The Debtors have made reasonable efforts to include as contingent, unliquidated, or disputed the claim of any party not included on the Debtors' open accounts payable that is associated with an account that has an accrual or receipt not invoiced.

Intercompany payables among the Debtors are reported on Schedule E/F, which may or may not result in allowed or enforceable claims by or against a given Debtor. The intercompany payables also may be subject to recoupment, netting, or other adjustments made pursuant to customary intercompany policies and practices not reflected in the Schedules.

To the extent practicable, Schedule E/F is intended to reflect the balance as of the Petition Date. Despite the Debtors' reasonable best efforts, to the extent an unsecured claim has been paid or may be paid, it is possible such claim is not included on Schedule E/F. Certain Debtors may pay additional claims listed on Schedule E/F during these chapter 11 cases pursuant to these and other orders of the Bankruptcy Court and the Debtors reserve all of their rights to update Schedule E/F to reflect such payments or to modify the claims register to account for the satisfaction of such claim. Additionally, Schedule E/F does not include any potential rejection damage claims of the counterparties to executory contracts and unexpired leases that may be rejected.

As of the time of filing the Schedules and Statements, the Debtors had not received all invoices for payables, expenses, and other liabilities that may have accrued prior to the Petition Date. Accordingly, the information contained in Schedules D and E/F may be incomplete. The Debtors reserve their rights to amend Schedules D and E/F if and as they receive such invoices.

4.      **Schedule G**. Although reasonable efforts have been made to ensure the accuracy of Schedule G regarding executory contracts and unexpired leases (collectively, the "**Agreements**"), review is ongoing and inadvertent errors, omissions or overinclusion may have occurred. The Debtors may have entered into various other types of Agreements in the ordinary course of their businesses, such as indemnity agreements, supplemental agreements, and amendments/letter agreements that may not be set forth in Schedule G. The Agreements listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letter and other documents, instruments and agreements that may not be listed on Schedule G. Executory

agreements that are oral in nature have not been included in Schedule G. Certain of the Agreements listed on Schedule G may have been entered into on behalf of more than one of the Debtors. Listing a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease or that such contract or agreement was in effect on the Petition Date or is valid or enforceable. The Debtors hereby reserve all their rights to dispute the validity, status, or enforceability of any contracts, agreements, or leases set forth in Schedule G and to amend or supplement such Schedule as necessary.

5.    **Schedule H**. The Debtors are party to certain prepetition secured credit agreements which were executed by multiple Debtors. The obligations of guarantors under the prepetition secured credit agreements are noted on Schedule H for each individual debtor.  Furthermore, the Debtors may not have identified certain guarantees that are embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments and other such agreements. No claim set forth on the Schedules and Statements of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other Debtors.

### C.  Specific Notes for Statements

1.    **Statement 1 and 2.** The gross revenue and non-business revenue reported for the current fiscal year are through September 18, 2023.

2.    **Statement 3**. The payments disclosed in Statement 3 are based on payments made by the Debtors with payment dates from June 20, 2023 to September 18, 2023. The actual dates that cash cleared the Debtors' bank accounts may differ based on the form of payment. The Debtors' accounts payable system does not include the corresponding payment clear dates and compiling this data would have required a time-consuming manual review of individual bank statements. It is expected, however, that many payments included in Statement 3 have payment clear dates that are the same as payment dates (*e.g.*, wires and other forms of electronic payments).

3.    **Statement 4.** As more fully described in the Cash Management Motion, prepetition, the Debtors engaged in intercompany transactions ("**Intercompany Transactions**") with each other in the ordinary course of their business.  American Physician Holdings LLC is a party to various management services agreements with certain of the other operating Debtors (collectively, the "**Management Services Agreements**").  In general, American Physician Holdings LLC provides managerial and professional services to the operating Debtors (other than services relating to the practice of medicine) and pays substantially all their operating expenses. The Debtors' operating companies transfer deposits made into their applicable bank accounts to the concentration account.  The Debtors have included the monthly activity between the Debtors. Payments to members of the Board of Managers, including Jim Decker, Jay Martus, James Frary and Lawerence Hirsh include amounts for outside counsel.  These amounts were allocated among the aforementioned parties, during their tenure.

4.    **Statement 6**.  The items listed in Statement 6 are instances where the Debtors specifically allowed and agreed to an offset of the Debtor's accounts payable against the Debtor's accounts receivable.  The Debtors have not included in Statement 6 (a) any patient refund programs managed by R1 that would offset the expected accounts receivable in the ordinary course of business.  The Debtors listed the offset previously agreed upon in the Debtors' prepetition

agreement with Sapientes Funding II ("**Sapientes**") for the collection of certain accounts receivable.  The Debtors also listed setoffs to stipend accounts receivable due to transition related activities in which successors agreed to provide active providers with prior acts coverage.

5.      **Statement 7**. The Debtors have used reasonable efforts to report all legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the Debtors were involved in any capacity within one year before the Petition Date. The Debtors reserve their rights to assert that neither the Debtors nor any affiliate of the Debtors is an appropriate party to such actions or proceedings. The Debtors are working with their insurance carriers to obtain details relating to workers' compensation, auto and general liability, medical malpractice claims and, if necessary, will supplement the Statement when received.

6.      **Statement 9**. The amounts listed were based on a manual review of items in the Debtors' books and records determined to be gifts or charitable contributions. As a result, inadvertent errors or omissions may exist. Further, other gifts may exist that are below the $1,000 threshold per recipient that are not captured herein. In the ordinary course of business, the company undertakes sponsorship activities.

7.      **Statement 11**. The Debtors have used reasonable efforts to identify payments for services of any entities who provided consultation concerning debt counseling or restructuring services, relief under the Bankruptcy Code or preparation of a petition in bankruptcy within one year immediately before the Petition Date, which are identified in the Debtors' response to Statement 11. Additional information regarding the Debtors' retention of professional service firms is and will be more fully described in the individual retention applications for those firms and any related orders.  Amounts listed reflect the total amounts paid to these respective firms as bifurcating the specific restructuring activities would be administratively burdensome.

8.      **Statement 13**. As described in the First Day Declaration the Debtors facilitated the orderly transitions of approximately 150 emergency department and hospital medicine contracts to alternative service providers and its health system/hospital partners who provided insourced solutions by the end of July 2023, and have been listed with an undetermined value.

9.      **Statement 16**.The Debtors, via their Revenue Cycle Manager, have access to patient records.  The Debtors adhere to HIPAA requirements and policies and have information security protocols to safeguard personally identifiable information.

10.      **Statement 26(d)**. Over the past two years, the Debtors have provided their financial statements via physical and electronic mail to various parties in the ordinary course of business, including current or potential secured lenders, government entities, shareholders, customers, and other interested parties. Professionals retained by the Debtors prior to the Petition Date also ran a comprehensive marketing and sale process and disclosed substantial financial information to numerous interested parties.  Parties provided with historical financial information as part of the Debtors' marketing and sale process have not been listed on Statement 26(d). Recipients of financial information generally received consolidated accounts for the Debtors.

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor | NETEP, PLLC |
| United States Bankruptcy Court for the: | District of Delaware |
| Case number (if known) | 23-11528 |

☐ Check if this is an amended filing

## Official Form 207

# Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy          04/22

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).

---

**Part 1:**          **Income**

1. **Gross revenue from business**

   ☑ None

2. **Non-business revenue**

   Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

   ☑ None

---

**Part 2:**          **List Certain Transfers Made Before Filing for Bankruptcy**

3. **Certain payments or transfers to creditors within 90 days before filing this case**

   List payments or transfers—including expense reimbursements—to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $7,575. (This amount may be adjusted on 4/1/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

   ☑ None

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

   List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $7,575. (This amount may be adjusted on 4/1/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

   ☑ None

5. **Repossessions, foreclosures, and returns**

   List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

   ☑ None

6. **Setoffs**

   List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

   ☑ None

---

**Part 3:**          **Legal Actions or Assignments**

7. **Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

   List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity-within 1 year before filing this case.

   ☑ None

---

8. **Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

---

**Part 4:   Certain Gifts and Charitable Contributions**

9. **List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☑ None

---

**Part 5:   Certain Losses**

10. **All losses from fire, theft, or other casualty within 1 year before filing this case.**

☑ None

---

**Part 6:   Certain Payments or Transfers**

11. **Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☑ None

12. **Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

☑ None

13. **Transfers not already listed on this statement**

List any transfers of money or other property—by sale, trade, or any other means—made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs.
Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☑ None

---

**Part 7:   Previous Locations**

14. **Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☑ Does not apply

---

**Part 8:   Health Care Bankruptcies**

15. **Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for :
—  diagnosing or treating injury, deformity, or disease, or
—  providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to Part 9.

---

**Part 9:   Personal Identifiable Information**

16. **Does the debtor collect and retain personally identifiable information of customers?**

☐ No.
☑ Yes.  State the nature of the information collected and retained.      PATIENT RECORDS

Does the debtor have a privacy policy about that information?
☐ No
☑ Yes

---

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☐ No. Go to Part 10.
☒ Yes. Does the debtor serve as plan administrator?

    ☒ No.
    ☐ Yes. Fill in below:

| Name of plan | Employer identification number of the plan |
|---|---|
| AMERICAN PHYSICIAN PARTNERS 401(K) PLAN | 83-2430927 |

    Has the plan been terminated?
    ☒ No
    ☐ Yes

---

**Part 10:**    **Certain Financial Accounts, Safe Deposit Boxes, and Storage Units**

**18. Closed financial accounts**
Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☒ None

**19. Safe deposit boxes**
List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☒ None

**20. Off-premises storage**
List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☒ None

---

**Part 11:**    **Property the Debtor Holds or Controls That the Debtor Does Not Own**

**21. Property held for another**
List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☒ None

---

**Part 12:**    **Details About Environmental Information**

For the purpose of Part 12, the following definitions apply:

- *Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).
- *Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.
- *Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22. Has the debtor been a party in any judicial or administrative proceeding under any environmental law?** Include settlements and orders.

☒ No
☐ Yes. Provide details below.

**23. Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☒ No
☐ Yes. Provide details below.

---

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

☒ No

☐ Yes. Provide details below.

**Part 13:**    Details About the Debtor's Business or Connections to Any Business

**25. Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☒ None

**26. Books, records, and financial statements**

26a.   List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

     ☒ None

26b.   List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

     ☒ None

26c.   List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed .

     ☒ None

26d.   List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

     ☒ None

**27. Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☒ None

**28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

☐ None

| Name | Address | Position and nature of any interest | % of interest, if any |
|------|---------|-------------------------------------|-----------------------|
| ANDREW MCQUEEN | 5121 MARYLAND WAY SUITE 300 BRENTWOOD, TN 37027 | SECRETARY AND SVP CHIEF DEVELOPMENT OFFICER | |
| TONY BRININGSTOOL | 5121 MARYLAND WAY SUITE 300 BRENTWOOD, TN 37027 | PRESIDENT AND CHIEF MEDICAL OFFICER | 100 |

**29. Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ None

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|------|---------|-------------------------------------|---------------------------------------------------|
| BOB NEWPORT | ADDRESS ON FILE | CHIEF FINANCIAL OFFICER | From 5/1/2015 To 10/31/2022 |
| CHARLES SOMERBY | ADDRESS ON FILE | TREASURER | From 5/1/2015 To 2/23/2023 |
| JAMES GRIMES | ADDRESS ON FILE | CHIEF FINANCIAL OFFICER | From 10/20/2022 To 7/3/2023 |
| JOHN RUTLEDGE | ADDRESS ON FILE | CHIEF EXECUTIVE OFFICER | From 5/1/2015 To 5/31/2023 |
| MATT STAPLETON | ADDRESS ON FILE | CHIEF OPERATING OFFICER | From 8/15/2022 To 8/15/2023 |

Debtor    NETEP, PLLC
         (Name)

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|------|---------|-------------------------------------|----------------------------------------------------|
| PAUL BELTER | ADDRESS ON FILE | INTERIM CHIEF FINANCIAL OFFICER | From 4/12/2022    To 10/31/2022 |

30. **Payments, distributions, or withdrawals credited or given to insiders**
   Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

   ☑ None

31. **Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

   ☑ None

32. **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

   ☑ None

Debtor    NETEP, PLLC
         (Name)                                           Case number (if known)  23-11528

| Part 14: | Signature and Declaration |
|---|---|

**WARNING** -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 10/12/2023.

✗   /s/ John C. DiDonato                                    John C. DiDonato
    Signature of individual signing on behalf of the debtor        Printed Name

    Chief Restructuring Officer
    Position or relationship to debtor

**Are additional pages to** *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* **(Official Form 207) attached?**

☒ No
☐ Yes